UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Borough of Naugatuck,<br>    *Plaintiff*,<br>v.<br>Knight Transportation, Inc. & Warren L. Huggins, Jr.,<br>    *Defendants*. | Civil No. 3:17-cv-00077 (JBA)<br><br>September 11, 2018 |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Borough of Naugatuck brings this action against Knight Transportation, Inc. and its employee Warren L. Huggins, Jr. ("Defendants") alleging negligent property damage to Plaintiff's high school track. Defendants concede liability and move [Doc. # 18] for summary judgment on the applicable measure of damages to be awarded to Plaintiff. Defendants' Motion for Summary Judgment is granted for the reasons that follow.

**I. Background**

Plaintiff did not submit a Local Rule 56(a)(2) Statement, and the following set of facts is undisputed for the purposes of this motion. *See* D. Conn. L. Civ. R. 56(a)(1) ("Each material fact set forth in the Local Rule 56(a)(1) Statement and supported by the evidence will be deemed admitted … unless such fact is controverted by the Local Rule 56(a)(2) Statement.")[1]

---

[1] Plaintiff attached a deposition transcript and two affidavits to its Memorandum as exhibits. The deposition, (Ex. 5 to Pl.'s Mem. Supp. Obj. to Mot. Summ. J. [Doc. # 19-5],) and one affidavit, (Ex. 6 to Pl.'s Mem. [Doc. # 19-6],) are from the Naugatuck High School Athletic Director, Brian Mariano, which corroborate facts contained in Defendant's Local Rule 56(a)(1) Statement. The second affidavit (Ex. 9 to Pl.'s Mem. [Doc. # 19-9]) addresses the costs of additional track repairs desired by Plaintiff.

On December 31, 2014, Defendants were making a scheduled delivery of products to Naugatuck High School. (Def.'s Stmt. of Material Facts [Doc. # 18-2] ¶ 2.) Defendant Huggins had trouble finding a road off the Plaintiff's property that would accommodate his tractor trailer vehicle. He opened the gate to and drove onto Plaintiff's high school track to turn his vehicle around. (*Id.* ¶¶ 3-4.) This maneuver resulted in damage to two parts of the track: a portion of one lane of the track itself ("Lane 3") and an infield area of the track. (*Id.* ¶ 5.) The damaged area of Lane 3 was approximately 1.5 square feet and required a patch of 1.3 square yards; the total area of the track is 6,980 yards. (*Id.* ¶¶ 5, 22.)

Plaintiff hired a subsidiary of the company that originally installed the track to perform the repairs to the track, which were completed by August 26, 2015 for a cost of $16,283.00. (*Id.* ¶ 7-8; Ex. B to *id.* [Doc. # 18-4] at 20.) This professional installer made the repairs using the same material used for the original installation and created a texture similar to the rest of the track. (Def.'s Stmt. ¶ 9.) There is no evidence to suggest that the repairs were not performed in a proper and workmanlike manner or that the repairs failed to meet industry standards for safety and performance. (*Id.* ¶ 10.)

Nonetheless, the repaired area of Lane 3 does not match the color of the rest of the track. (*Id.* ¶ 16.) There is also a slight difference in compression between the repaired portion of Lane 3 and the adjacent track. (*See* Dep. Tr. of Brian Mariano, Ex. A to *id.* [Doc. 18-3] at 23:3-8 ("... when the weather is cold, the track is hard everywhere, but as you get into track season, there's a definite squishier feel. There's a little more compression to the patch than the rest of the track. Typically, the track is a little bit firmer for that grip, and that area is a little bit softer. . . .").) The repaired portion of the infield area of the track is visually imperceptible. (Def.'s Stmt. ¶ 17; Engineer's

Report, Ex. C to *id.* [Doc. # 18-5] at 5 ("Recent photographs show uniform color and texture throughout the repaired Infield. . . .").)

The repaired area of the track is both safe to use and fully functional for its intended use—there is no evidence that the difference in compression affects the performance of the track, and the track has been in continuous, normal use since it was repaired. (Def.'s Stmt. ¶¶ 13, 16–17.) No visiting coach or athlete has raised concerns about the track, and the track coach at Naugatuck High School has never voiced any safety concerns about the track.[2] (*Id.* ¶¶ 14-15.) However, some community members have complained about the track's aesthetics. (Mariano Dep. Tr. at 19:12-14.)

In its proposal submitted to Plaintiffs, the repair installer included an optional component of the repair: "'Additional Charge' – In the event that the patch area is still visible and the [Plaintiff] is not satisfied an[d] a[n] additional structural spray layer is needed there will be a charge of $5900.00 added to the [$16,283.00] base price below." (3/28/15 Proposal, Ex. B to Def.'s Stmt. at 22.) Plaintiff did not purchase this option. (Def.'s Stmt. ¶¶ 19-20.)[3] More than one year after repairs were completed, Plaintiff received a proposal for applying a structural spray layer to the surface of the entire track at an estimated cost of $119,250.00. (10/29/16 Proposal, Ex. B to *id.* at 23.) Even

---

[2] The Defendants note that at the time of the repairs, the track had already reached between 40-69% of its projected service life, and it was foreseeable that the track would require repairs or resurfacing in the future, apart from any issues related to Defendants' negligence. (*Id.* ¶¶ 11-12.)

[3] The Sales and General Manager of the repair installer stated that the additional spray layer needed to be applied at the same time as the rest of the repair; if applied afterwards, it is more expensive due to necessary pre-spraying preparations. The addition of a spray layer would lessen the appearance of the seams between the repaired portion and the adjacent track but would not completely eliminate color or texture differences or the appearance of the seams. (Aff. of Douglas Stone, Ex. 9 to Pl.'s Mem. [Doc. 19-9] ¶¶ 11–13.)

with this additional step, the repair to Lane 3 will remain somewhat noticeable. (Stone Aff. ¶ 17 ("It is almost impossible to completely correct a *color* difference in the track surface after a repair is made. It is possible that a structural spray layer over the entire track surface will minimize the appearance of any color differences, but it will not completely restore the appearance of the track surface to its original, pre-damage condition.").)

Plaintiffs make no argument that the infield portion of the track requires further repairs. (Pl.'s Mem. [Doc. # 19] at 9 ("The plaintiff submits that there is sufficient evidence . . . to establish the existence of a genuine issue of material fact, namely, whether the running track was restored to substantially the same condition it was in before the damage . . . .").)

## II. Discussion

### A. Legal Standard

Summary judgment is appropriate where, after all ambiguities and inferences are drawn in favor of the party against whom judgment is sought, the moving party shows there is no genuine issue of material fact. *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir. 1994) (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975)). "The moving party bears the burden of establishing the absence of any genuine issue of material fact," *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010), but "in cases where the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Brady v. Town of Colchester*, 863 F.2d 205, 210-11 (2d Cir. 1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In

4

determining the motion for summary judgment, the Court may consider pleadings, depositions, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

### B. Damages

The parties do not dispute Defendants' liability for negligent damage to Plaintiff's property; at issue is only the measure of recoverable damages. Defendants contend that damages should be limited to $16,283.00—the cost of the completed repairs—while Plaintiff claims there remains a genuine issue of material fact as to whether those repairs restored the track to substantially the same condition as before it was damaged, given the additional work Plaintiff desires to minimize the visible seams in Lane 3.[4]

The parties agree that the amount of Plaintiff's recovery must be the cost of repairs necessary to return the track to substantially the same condition it was in before Defendant's negligence. "[W]hen the property injured may be repaired, if the repairs will substantially restore the property to its former condition, the cost of such repairs will ordinarily furnish proper proof of the loss." *Hawkins v. Garford Trucking Co.*, 96 Conn. 337 (Conn. 1921); *see also Whitman Hotel Corp. v. Elliott & Watrous Eng'g Co.*, 137 Conn. 562, 573 (Conn. 1951) (holding that measure of damage to a property "may be determined by the cost of repairing the damage," provided the repairs do not increase the value of the property and the cost of the repairs does not exceed the value of the property). Defendants correctly note that substantially restoring a property for

---

[4] Defendants argue in the alternative that Plaintiff's measure of damages should be limited to $22,183.00—the $16,283.00 cost of repairs plus the $5,900.00 "Additional Charge" for an additional spray layer available to Plaintiff when the repairs were performed. (Def.'s Mem. Supp. Mot. Summ. J. [Doc. # 18-1] at 2.) However, Plaintiff chose not to pay for this additional repair when it was offered, and given the Court's determination, discussed below, that the track has been substantially repaired as required by law, there is no need to award costs for any additional repairs.

5

purposes of damage calculations does not require that the property be returned to its exact original condition before the loss. *See Substantial, Black's Law Dictionary* (10th ed. 2014) ("Containing the essence of a thing; conveying the right idea even if not the exact details.").

Plaintiff's track has been largely repaired—even taking the evidence in the light most favorable to Plaintiff, that evidence demonstrates that the track is fully functional, though aesthetic concerns and a slight compression difference remain for the repaired portion of Lane 3. The only question currently before the Court is whether there is a genuine dispute whether this repair returned Plaintiff's track to "substantially" the same condition as before Defendant's negligence.

Defendants argue that Plaintiff's track has been returned to substantially the same condition, and that Plaintiff's requested additional repairs seek unnecessary restoration to "*exactly* the same condition." (Def.'s Mem. at 6.) Defendants argue that because the track is safe to use, has been in continuous use since it was repaired with no complaints about safety or performance, and suffers only from some discoloration and a slight difference in compression on approximately 0.02% of the track, the track has been returned to substantially the same condition. (*Id.*) Moreover, Defendants argue that Plaintiffs declined the opportunity to further assuage their aesthetic concerns by choosing not to pursue the $5,900 additional spray layer at the time of repair. (*Id.* at 7.)

Nonetheless, Plaintiff maintains that these remaining issues are enough for a reasonable jury to find that the track has not been substantially repaired and that further repairs are required to substantially restore the track to its original condition, the cost of which should be included in Plaintiff's damages award. (Pl.'s Mem. at 7-9.) Plaintiff analogizes to a situation in which a car's door is damaged and the body shop repairs the car with a functional door of a different color,

arguing that the car would not be in substantially the same condition as it was before the accident, even if it were functional and safe. (*Id.* at 7.)

Plaintiff's analogy is unconvincing. A mismatched door would constitute a major change to the aesthetics of a car, altering a large proportion of the car's surface area. Here, the discolored area in Lane 3 constitutes only 0.02% of the surface area of the track. Moreover, at the time of the repairs, Plaintiff opted not to pay the $5,900.00 "Additional Charge" for an additional spray coat to reduce the visibility of the patch, (Def.'s Stmt. ¶¶ 19–20,) undermining Plaintiff's arguments as to the significance of the appearance of the patch.

Plaintiff offers little else in support of its contention that the remaining aesthetic and compression differences leave the track in a condition which is not substantially the same as its pre-damage condition. Plaintiff does not proffer any evidence that the track is less functional than it was before it was damaged, and the track has remained in continuous use since the time of the repairs with no evidence in the record showing that Plaintiff has made any further repairs or received any complaints related to safety or usability from either visiting coaches and athletes or the track coach at Naugatuck High School. (*See* Def.'s Stmt. ¶¶ 14-15.) Even Plaintiff's own Athletic Director admits that although there is "a definite feel difference, . . . [and] a definite little bit of compression difference, . . . the main thing is the color" and there are no safety or functionality concerns. (Mariano Dep. Tr. at 32:8-11.) It is therefore undisputed that the track has been restored to its useful condition, with remaining slight differences in feel and color. Moreover, even after Plaintiff's requested additional repairs—at an estimated cost of $119,250.00—some difference in color would remain. (Stone Aff. ¶ 17.)

The Court finds that the track has been substantially restored to its prior condition, and the proper measure of damages is the $16,283.00 cost of the completed repair, not the total do-over which Plaintiff seeks.

### III. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment on damages is GRANTED. Judgment is hereby entered in favor of Plaintiff for the amount of $16,283.00. The Clerk is directed to enter Judgment and close the case.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 11th day of September 2018.